Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | P. Michael Mahoney |
|---|---|---|---|
| **CASE NUMBER** | 03 C 50190 | **DATE** | 2/3/2005 |
| **CASE TITLE** | Bell, et al vs. Woodward | | |

**DOCKET ENTRY TEXT:**

For the reasons stated on the attached Memorandum Opinion and Order, Plaintiffs' Motion to Compel is granted. Defendant's Request for a Protective Order is denied. Defendant is ordered to make a reasonable inquiry regarding "working leads" and provide responsive information to the Plaintiffs within forty-five days of this Order.

■ [ For further detail see attached order.]   ■ [ Notices mailed by judge's staff.]

| | Courtroom Deputy Initials: | GG/AM |
|---|---|---|

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| DEMETRIC BELL, MARILYN BERRY, CATHERINE BROWN, KIMBERLY BUCHANAN, GILBERTO GONZALEZ, DELLA JARRETT, TIMMY LINK, EDDIE MANNING, JR., KIM NACHAMPASSACK, DUANE PARKS, BRENDA RILEY, DARNEL ROYAL, ROBIN SALLIS, VELMA SANDERS, BARBARA SMITH, TONY TRIPLETT, JANET WILKINS and FRED WYNNE, individually and on behalf of similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>WOODWARD GOVERNOR COMPANY,<br><br>Defendant. | Case No. 03 C 50190<br><br>Magistrate Judge<br>P. Michael Mahoney |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Plaintiffs' Motion to Compel Response Regarding the Identity of Working Leads, filed January 11, 2005. Defendants filed supplemental information regarding the "working lead" interrogatory per the request of the court on January 21, 2005. At the same time, Defendant requested a protective order regarding the "working lead" interrogatory.

The interrogatory request at issue was served on November 11, 2004, and states:

> Identify all persons who acted as "working leads" or "working leaders" for the company at its Winnebago County facilities during

1

> the period from January 1, 1998 through the present, and state the
> person who selected each "working lead" or "working leader" for
> this responsibility and the period of time during which each
> "working lead" or "working leader" acted in this capacity.

(Pl.'s Mtn., Ex. A). Plaintiffs represented in their Motion that "working leads" are persons designated with responsibility over co-worker groups, and that the benefit of becoming a "working lead" is opportunity for advancement, opportunity to move up to an actual leader job, and opportunity to obtain a competitive edge. (Pl.'s Mtn., at 1). Defendant responded that "the working lead" responsibility is carried out on an informal basis and is largely determinable only by memory of its workers. Defendant further stated that there is no job code or other similar means to easily identify employees that have acted as "working leads."

## 1. Discussion

The court begins with the position that under Fed. R. Civ. P. 26, discovery related to "working leads" is relevant to both Plaintiffs' and Defendant's case, especially since the district court recently certified both a compensation class and an advancement class of employees passed over for un-posted promotions in this lawsuit. The court also notes that under Rule 33(b), interrogatories must be answered fully and include all information within the party's control or known by the party's agents. If only some information is available, that information must be provided, but a prefatory statement may be used to place the answer in context.

Even so, the court does have authority to limit discovery that is unreasonably cumulative or unduly burdensome or expensive. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681-82 (7th Cir. 2002)(stating that the court should weigh the value of the material sought against the burden of providing it). Under Rule 26(c), it is clear that "for good cause shown, the court in

which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (1) that the disclosure or discovery not be had." Fed. R. Civ. P. 26(c)(1). The court has discretion to decide when a protective order is appropriate and what degree of protection is required. *Seattle Times Co., v. Rhinehart*, 467 U.S. 20, 36, 104 (1984). Only good cause is required in determining whether or not to issue a protective order. *Id.* at 37. In deciding whether good cause exists, the court must balance the interests of the parties, taking into account the harm to the party seeking the protective order and the importance of the disclosure to the non-moving party. *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997). The party seeking the protective order has the burden of showing that good cause exists by alleging particular and specific facts. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981). Thus, to decide Plaintiffs' Motion and Defendant's request for a protective order, the court must weigh the value of the material sought against the burden of providing it.

### A. Burden of Disclosure

Defendant asks the court to find that its current answer to the "working lead" interrogatory is sufficient, and moves for a protective order. Defendant argues against further disclosure because of the heavy burden of gathering additional information about "working leads" and because it thinks any additional information would be of limited value since it would be based entirely on the recollections of supervisors.

In support of its request for a protective order, Defendant states that Woodward would have to survey approximately eight-two current supervisors and an undesignated number of past supervisors to ascertain new information about "working leads." Defendant further states that

3

there are forty-six supervisors for just the Plaintiffs and charging parties. Defendant believes that it would need thirty minutes to an hour for an attorney to question each supervisor (longer for retired supervisors) about their recollections of "working leads." Finally, Defendant suggests it should not be burdened with this fact-gathering when Plaintiffs' counsel could ask their own clients about who the working leads are/were at Woodward.

B. **Importance of Disclosure**

Plaintiffs argue that the importance of the disclosure of information about "working leads" is highly relevant evidence to Plaintiff's advancement claims because being a "working lead" opens the door to later opportunities for advancement. Plaintiffs further state that Defendants exaggerate their burden of production. Instead of time-consuming interviews, Plaintiffs propose that Defendant could instead send a brief written inquiry to supervisors asking them to submit a sheet of paper with three columns stating to the best of their knowledge: 1) who working leads were, 2) the relevant time periods, and 3) the group or area that the person led.[1] Plaintiffs also argue that such a survey would save time later in depositions and could limit the number of depositions needed. Finally, Plaintiff states that any imperfections in the survey results could be addressed later at trial.

C. **A Balance**

From the thorough and informative briefs of the parties (as compared to other finger-pointing motions and briefs recently filed), the court understands the Plaintiffs' need to determine the identity of both the "working leads" and persons who select "working leads," as

---

[1]The court notes that this request somewhat departs from the interrogatory served on 11/1/04 that asked Woodward to (a) identify "working leads" (b) state time periods of responsibility, and (c) identify persons selecting leads.

4

well as the relevant time periods the "working lead" acted in such a capacity. The court also understands that this information cannot be compiled by Defendants with a drop of a hat. Some type of interview or survey must take place. The court, however, finds that Plaintiffs' suggestion of a three column survey makes imminent sense. With very little effort, a "working lead" survey could be completed to the best of each supervisors' knowledge. Even a short e-mail sent to supervisors would suffice to gather information relevant to Plaintiffs' interrogatory, further negating the need for interviews and paper surveys. Of course, Defendants are free to proceed with discovery fact-gathering in any reasonable manner they see fit. However, the court sees no reason to deny Plaintiffs discovery simply because Defendant could be heavily burdened if they proceeded in one manner when a less cumbersome method is available.

As such, the court finds that Defendant has not met its burden to show that good cause exists to issue a protective order. Defendants are ordered to respond to Plaintiffs' "working lead" interrogatory within forty-five days of this Order.

2. **Conclusion**

For the foregoing reasons, Plaintiffs' Motion to Compel is granted. Defendant's Request for a Protective Order is denied. Defendant is ordered to make a reasonable inquiry regarding "working leads" and provide responsive information to the Plaintiffs within forty-five days of this Order.

ENTER:

_____
P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: 2/3/05

5