# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | P. Michael Mahoney |
|---|---|---|---|
| **CASE NUMBER** | 03 C 50190 | **DATE** | 8/31/2005 |
| **CASE TITLE** | Bell, et al vs. Woodward Governor Co. | | |

**DOCKET ENTRY TEXT:**

For the reasons stated on the attached Memorandum Opinion and Order, the court grants Plaintiffs' 8/22/05 Motion to Compel in part and orders Defendant to produce all documents responsive to Plaintiffs' May 2, 2005 document request. However, the court limits the production in two ways. First, the court gives Defendant permission to redact the identifying information of private, non-governmental entities contained in documents produced. Second, the court grants Defendant's 8/25/05 Motion for a Protective Order in part by restricting Plaintiffs from releasing to private, non-governmental entities information and documents produced by Defendant regarding certifications.

■ [ For further detail see attached order.]

Notices mailed by judge's staff.

**FILED**

AUG 3 1 2005

MICHAEL W. DOBBINS, CLERK
UNITED STATES DISTRICT COURT

| | Courtroom Deputy Initials: | AM |
|---|---|---|

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| DEMETRIC BELL, MARILYN BERRY, CATHERINE BROWN, KIMBERLY BUCHANAN, GILBERTO GONZALEZ, DELLA JARRETT, TIMMY LINK, EDDIE MANNING, JR., KIM NACHAMPASSACK, DUANE PARKS, BRENDA RILEY, DARNEL ROYAL, ROBIN SALLIS, VELMA SANDERS, BARBARA SMITH, TONY TRIPLETT, JANET WILKINS and FRED WYNNE, individually and on behalf of similarly situated persons, | Case No. 03 C 50190<br><br>Magistrate Judge<br>P. Michael Mahoney |
| Plaintiffs, | |
| v. | |
| WOODWARD GOVERNOR COMPANY, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on two separate, but related, motions: Plaintiffs' August 22, 2005 Motion to Compel Production of Documents Containing Representations of Compliance with Federal Contractor Affirmative Action Obligations and Defendant's August 25, 2005 Motion for Protective Order Regarding Plaintiffs' Counsel's Interference with Woodward's Relationships with Third Parties. For the reasons stated below, Plaintiffs' and Defendant's Motions are granted in part and denied in part.

I.  History

Pursuant to Executive Order 11246 and 41 C.F.R. Parts 60-1 and 60-2, certain government contractors are required to develop and maintain an annually updated written

1

affirmative action program. A contractor may be debarred from receiving future contracts or modifications or extensions of existing contracts for any violation of Executive Order 11246 or its implementing rules, regulations and orders. 41 C.F.R. § 60-1.27.

Plaintiffs state, and Defendant does not deny, that Woodward Governor is a federal contractor subject to affirmative action obligations. As part of its obligations, Woodward Governor would be required to make certifications regarding its compliance with 41 C.F.R. Parts 60-1 and 60-2 at the outset of a negotiation for a federal contract. Plaintiffs maintain that Defendant is either in default of its discovery obligations, or has not been in a position to truthfully certify its compliance with affirmative action obligations since 2003 because Defendant has not produced a written affirmative action program for 2004 or 2005 in the course of discovery. In support of their allegation that Defendant does not have a current affirmative action plan, Plaintiffs call the court's attention to deposition testimony from Woodward employee, Ms. Kikren Sue Lawrence, that suggests Defendant had no affirmative action plan for 2004. *See* Pl.s' Mtn. at 2 (citing Ex. A, Lawrence Dep. at 133). Plaintiffs also cite, but do not attach, the similar deposition testimony of Carol Smith. (Pl.s' Resp. at 1).

Following up on discovery related to Defendant's affirmative action program, Plaintiffs served a May 2, 2005 document request seeking production of certifications made by Woodward regarding compliance with federal contractor affirmative action obligations. Defendant objected to the request as overly broad and irrelevant, but also stated that it had not located any additional documents responsive to the request not already produced.

On August 4, 2005, Plaintiffs deposed Woodward employee, Mr. Ronald Glisan, who is in charge of direct government sales for Woodward. *See* Pl.s' Mtn. at 3 (citing Ex. C, Glisan

2

Dep. at 62-64, 86-87, 89). Mr. Glisan testified that affirmative action certifications are filed, stored, and retained as bid packages for seven years in his office. Mr. Glisan also testified that no one had asked him to gather these documents for the pending lawsuit, and that he was not aware of any requests made to anyone in his department.

Based upon the above deposition testimony, Plaintiffs now seek an order compelling Defendant to produce certifications, form 1999 to the present, as responsive to their May 2, 2005 document request. Plaintiffs maintain that the certifications are relevant as probative of discriminatory intent under *Mozee v. American Marine Serv. Co.* 940 F.2d 1036, 1051 (7th Cir. 1991).

Defendant, in response to Plaintiffs' Motion to Compel, filed a Motion for a Protective Order regarding Plaintiffs' counsel's attempt to interfere with Woodward's relationships with the OFCCP and the EEOC. During oral argument on the Motions, it became clear that Defendant also seeks protection from the disclosure of certifications produced in discovery to private, non-governmental entities. Defendant maintains that Plaintiffs' May 2, 2005 document request is irrelevant to the pending law suit as certifications only state compliance with federal contractor obligations and do not show a failure to comply with an affirmative action plan as was contemplated as evidence of discriminatory intent in *Mozee*. 940 F.2d, at 1051.

**II.     Analysis**

As always, the court looks to Fed. R. Civ. P. 26 and 37 to decide whether discovery should be allowed. Generally, parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible

evidence. Fed. R. Civ. P. 26(b)(1). Even so, the court does have authority to limit discovery that is unreasonably cumulative or unduly burdensome or expensive. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681-82 (7th Cir. 2002)(stating that the court should weigh the value of the material sought against the burden of providing it). Under Rule 26(c), it is clear that "for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (1) that the disclosure or discovery not be had; (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; [and/or] (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters . . ." Fed. R. Civ. P. 26(c).

The court has discretion to decide when a protective order is appropriate and what degree of protection is required. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Only good cause is required in determining whether or not to issue a protective order. *Id.* at 37. In deciding whether good cause exists, the court must balance the interests of the parties, taking into account the harm to the party seeking the protective order and the importance of the disclosure to the non-moving party. *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997). The party seeking the protective order has the burden of showing that good cause exists by alleging particular and specific facts. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981). Thus, to decide Plaintiffs' Motion to Compel and Defendant's Motion for a Protective Order, the court must balance the value of the material sought against the burden of providing it.

In this case, the court finds that Plaintiffs' likelihood of discovering relevant information from Defendant's production of documents containing representations of compliance with federal contractor affirmative action obligations ultimately outweighs the burden of production on Defendant, but the court also finds that Defendant is entitled to certain protections from the unnecessary disclosure of discovery materials to private, non-governmental entities.

To begin with, the court addresses the relevancy of the requested certifications to the pending class action employment discrimination lawsuit.[1] Proving class-wide liability for intentional discrimination, or disparate treatment, requires a showing that an employer conducted business through a pattern or practice of discrimination. *Teamsters v. United States*, 431 U.S. 324, 336 (1997). More than mere isolated incidents of discrimination, proof in pattern or practice cases requires "that racial discrimination was the company's standard operating procedure - the regular rather than the unusual practice." *Id.*

Here, both parties argue either for or against relevancy based on their interpretation of *Mozee v. American Marine Serv. Co.* 940 F.2d 1036, 1051 (7th Cir. 1991). In *Mozee*, the Seventh Circuit affirmed that "[e]vidence of an employer's failure to follow the requirements of an affirmative action plan is . . . relevant, though not conclusive, in determining intentional racial discrimination." *Id.* In this case, it is the existence (or non-existence) of an affirmative action plan that is at issue; not the failure to follow requirements of an affirmative action plan as in *Mozee*. Nonetheless, this court finds that an alleged failure to create/maintain an affirmative

---

[1] The relevance of Plaintiffs' production request for Defendant's affirmative action plans in general has already been decided. The court granted Plaintiffs' Motion to Compel production of updated EEO-1 data on March 10, 2005.

5

action plan tracks the relevance of alleged failure to follow the requirements of an affirmative action plan. As the sought after certifications contain Defendant's statement of compliance with Executive Order 11246 and its implementing rules, regulations and orders, and may contain relevant dates, signatures, and information leading to the discovery of other relevant information, the court finds the certifications relevant and subject to discovery.

However, the court is not deaf to Defendant's claims of "annoyance, embarrassment, oppression, or undue burden" stemming form the release of certifications identifying the persons or entities with which Defendant conducts business. Fed. R. Civ. P. 26(c). While there is little physical or economic burden to Defendant as the relevant documents appear to be stored in one office, there is a risk of annoyance and interference with Defendant's business relationships with governmental entities and non-governmental entities unrelated to the pending litigation. Defendant asks the court to immunize its current business relationships from disparagement or other forms of antagonistic behavior as a result of producing, unrestricted to Plaintiffs, certifications that may contain identifying information of Defendant's business associates.

As a rejoinder to Defendant's burden, Plaintiffs maintain that they have every right to communicate with the EEOC and the OFCCP regarding Defendant's compliance with government regulations, but deny any interest in contacting private, non-governmental entities or persons that do business with Defendant.

Based on the above, the court finds three things that must be factored into its balancing equation. First, the court finds that the value of the documents sought by Plaintiffs is relatively high as production may be probative towards Plaintiffs' prima facie case. Second, the court finds

that the Defendant's burden of production is also high due to the risk of interference with Defendant's business relationships with private, non-governmental entities.[2] Third, the court finds that underlying this entire balancing dilemma is the fact that Plaintiffs have disclaimed any intent to contact private, non-governmental entities. Construed together, it appears to the court that this is a case where the court should use its discretion under the Federal Rules not to deny discovery, but to place reasonable restrictions on the scope and use of documents produced.

Accordingly, the court grants Plaintiffs' Motion to Compel in part and orders Defendant to produce all documents responsive to Plaintiffs' May 2, 2005 document request. However, the court limits the production in two ways. First, the court gives Defendant permission to redact the identifying information of private, non-governmental entities contained in documents produced. Second, the court grants Defendant's Motion for a Protective Order in part by restricting Plaintiffs from releasing to private, non-governmental entities information and documents produced by Defendant regarding certifications.

ENTER:

P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: 8/31/05

---

[2] The court notes that it does not find cause at this time to intrude on Plaintiffs' right to contact government entities like the EEOC and OFCCP for public policy/First Amendment reasons.